IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KORBEIN SCHULTZ ) | Case No. <u>3:24-cr-00056</u><br><br>JUDGE TRAUGER |

**GOVERNMENT'S *UNOPPOSED* MOTION FOR A PROTECTIVE ORDER**

The United States, through United States Attorney Henry C. Leventis and Assistant United States Attorney Josh Kurtzman, hereby moves, pursuant to Federal Rule of Criminal Procedure 16(d)(1), for a protective order (a proposed protective order is attached hereto) regarding discovery in this case. In support of its motion, the United States sets forth as follows:

1. On March 6, 2024, a federal grand jury returned an Indictment, charging Korbein Schultz with various violations of federal law, including Conspiracy to Gather, Transmit, or Lose Defense Information, in violation of 18 U.S.C. § 793(g); Unlawful Export of Defense Articles to China, in violation of 22 U.S.C. § 2778; Conspiracy to Unlawfully Export Defense Articles to China, in violation of 22 U.S.C. § 2778; and, Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(2)(C). From June 2022 until the time of his arrest on March 7, 2024, Schultz is alleged to have conspired with an individual, identified as Conspirator A in the Indictment, to disclose documents, writings, plans, maps, notes, and photographs relating to national defense, as well as information relating to national defense which Schultz had reason to believe could be used to injure the United States or used to the advantage of a foreign nation. Conspirator A recruited Schultz, who possessed a Top-Secret/ Secret Compartmentalized Information ("TS/SCI") security clearance, and frequently tasked him to gather documents and sensitive U.S. military information. Specifically, Conspirator A tasked Schultz with gathering information related to a variety of U.S.

1

military weapons systems, including classified information, and information related to the United States' potential plans if Taiwan came under military attack. Some of the information that Schultz provided to Conspirator A included documents related to the High Mobility Artillery Rocket System (HIMARS), information on hypersonic equipment, studies on the future development of U.S. military forces, studies on major countries such as the People's Republic of China, and summaries of military drills and operations. In exchange for the documents and information, Conspirator A made at least fourteen payments to Schultz that totaled approximately $42,000. Throughout the entirety of the conspiracy, Conspirator A represented to Schultz that he lived in Hong Kong.

2. This prosecution is the product of a multi-month investigation by the Federal Bureau of Investigation and the United States Army's Counterintelligence Command into the activities of Schultz within the Middle District of Tennessee and elsewhere. The discovery in this case—which consists, inter alia, of reports prepared by the Federal Bureau of Investigation and the U.S. Army Counterintelligence Command; witness statements and interviews; photographs; surveillance; data from mobile phones, and other electronic devices; search warrants; and evidence obtained from social media accounts—is voluminous. Moreover, much of this material involves materials that are not available to the public, to include SECRET/NOFORN, Controlled Unclassified Information, and information unavailable to individuals outside the United States Government.

3. The Government has serious concerns that if the Defendant in this case is provided with copies of certain materials to retain for themselves, these materials could be disclosed to or circulated among third parties inside or outside the facilities where the defendant is currently being held or, to the extent the defendant are released pending trial in connection with this case, disclosed to or circulated among third parties not in custody. The Government is particularly concerned that

dissemination of these materials could result in further violations of federal law and expose sensitive material regarding numerous topics.

4. The Government respectfully requests that the Court enter a protective order permitting defense counsel to review all discovery materials with their client, but preventing defense counsel from providing the defendant, or anyone associated with the defendant, other than members of the defendant's legal defense team, which includes experts hired by the defense, with copies of any materials to retain for themselves. Defense Counsel may provide individual discovery documents to their client if there's a prior agreement with the Government.

5. The parties agree that they will first attempt to resolve any issues related to this protective order before filing motions with the Court.

6. Federal Rule of Criminal Procedure 16(d)(1) provides, in pertinent part, that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." And it is settled that trial courts maintain significant flexibility in employing protective orders which restrict the use of materials produced in discovery. *See Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect."); *United States v. Garcia*, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005) (observing that defendants "have no right to extended independent review of [Jencks Act] materials in the privacy of their cells"); *United States v. Salemme*, 978 F. Supp. 386, 389-90 (D. Mass. June 26, 1977) (limiting dissemination of discovery materials to certain authorized individuals). Trial courts, moreover, routinely tailor protective orders to limit the dissemination of discovery, in order to minimize the risks that dissemination of such information poses to the safety of potential witnesses. *See, e.g.*, *United States v. Dent*, No. SACR 16-00029(B)-CJC, 2017 WL 1025162, at *3-5 (C.D. Cal. Mar. 15, 2017) (declining to lift

3

protective order preventing counsel from providing copies of discovery to defendant for defendant's retention where government showed that potential dissemination of such discovery posed a threat to witnesses and their families); *United States v. Mitchell*, No. 1:15-cr-00040-JAW-3, 2016 WL 7076991, at *1-4 (D. Maine Dec. 5, 2016) (issuing protective order preventing counsel from providing copies of discovery to defendant for defendant's retention, given concerns that such material could be disseminated by gang members and used to intimidate witnesses); *United States v. Johnson*, 191 F. Supp. 3d 363, 369-371 (M.D. Penn. May 11, 2016) (declining to rescind protective order in part to protect cooperating witnesses and confidential investigative techniques); *United States v. Cordova*, 806 F.3d 1085, 1090-91 (D.C. Cir. 2015) (defendant suffered no prejudice from the district court's protective order precluding defendant from possessing copies of Jencks material when defendant was allowed advanced receipt of, and defense counsel had full access to, the Jencks material); *United States v. Palmer*, No. 10 Cr. 910(JSR), 2011 WL 672412, at *1 (S.D.N.Y. Feb. 14, 2011) ("[Jencks material] is often copied, passed around prisons throughout the country, and used to retaliate against cooperators.") (citations omitted); *United States v. Guerrero*, No. 09 CR 339, 2010 WL 1506548, at *13 (S.D.N.Y. Apr. 14, 2010) (precluding defendant from possessing any Jencks material in any jail facility except that defendant may review Jencks material in the possession of defense counsel and in the presence of defense counsel in order to protect government witnesses.); *United States v. Barbeito*, No. 2:09-cr-00222, 2009 U.S. Dist. LEXIS 102688, at *7-8 (S.D. W. Va. Oct. 30, 2009) ("It is appropriate . . . to employ Rule 16(d) protective orders to curtail the public dissemination of sensitive discovery materials that may endanger witnesses or informants."); *United States v. Scott*, No. 1:05-CR-443-11, 2008 WL 4372814, at *1-2 (M.D. Pa. Sept. 19, 2008) ("[C]areful restriction on the use of [Jencks Act] material . . . warranted, considering the wide dissemination of [Jencks Act] materials

within the prison system and the possibility that hard evidence of cooperation with the Government can facilitate witness intimidation or retaliation.").

7. The Government thus respectfully requests that the Court exercise its discretionary power and issue the attached Protective Order restricting the dissemination of discovery in this case in a manner that preserves the defendant's ability to review discovery materials but also ensures the national security concerns outlined above are adequately protected.

## CONCLUSION

WHEREFORE, for the reasons described above, the United States respectfully requests that this Court grant this Motion and issue the attached proposed Protective Order.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*/s/ Joshua A. Kurtzman*
JOSHUA A. KURTZMAN
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Phone: (615) 736-5151

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024 I electronically served one copy of the Government's Motion for a Protective Order with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to defendant's counsel in this case.

*/s/ Joshua A. Kurtzman*
JOSHUA A. KURTZMAN
Assistant United States Attorney