IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:24-cr-00056 |
| v. | ) |
| | ) Judge Trauger |
| KORBEIN SCHULTZ | ) |

## PLEA AGREEMENT

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Joshua A. Kurtzman, and Department of Justice Trial Attorneys Christopher Cook and Adam Barry, and defendant, Korbein Schultz, through defendant's counsel, MaryKathryn Harcombe, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.  Defendant acknowledges that he has been charged in the Indictment in this case with:

    a. Count One: Conspiracy to obtain and transmit national defense information, in violation of Title 18, United States Code, Section 793(g);

    b. Counts Two, Three, and Four: Export of technical data related to defense articles to the People's Republic of China ("China") without a license, in violation of Title 22, United States Code, Sections 2778(b)(2) and (c) (the "Arms Export Control Act"), and Title 22, Code of Federal Regulations, Sections 121.1, 127.1, and 127.3 (the "International Traffic in Arms Regulations" or "ITAR"));

c. Count Five: Conspiracy to violate the Arms Export Control Act, in violation of Title 22, United States Code, Section 2778(b)(2) and (c), and the ITAR, in violation of Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a)(4), and 127.3; and

d. Count Six: Bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(2)(C).

2. Defendant has read the charges against him contained in the Indictment. Those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to all counts in the Indictment, charging him with conspiracy to obtain and transmit national defense information, the export of technical data related to defense articles to China without a license, conspiracy to violate the Arms Export Control Act and ITAR, and bribery of a public official.

## Penalties

4. The parties understand and agree that the offenses with which the defendant is charged carry the following maximum penalties:

a. Count One: a maximum of 10 years of imprisonment, not more than three years of supervised release, a $250,000 fine, and a $100 special assessment.

b. Counts Two, Three, and Four: a maximum of 20 years of imprisonment, not more than three years of supervised release, a $1,000,000 fine, and a $100 special assessment.

c. Count Five: a maximum of 20 years of imprisonment, not more than three years of supervised release, a $1,000,000 fine, and a $100 special assessment.

2

d. Count Six: a maximum of 15 years of imprisonment, not more than three years of supervised release, a $250,000 fine, and a $100 special assessment.

Defendant also understands that because of the offenses to which he is pleading guilty, he is subject to forfeiture of property as alleged in the Indictment.

<u>Acknowledgements and Waivers Regarding Pleas of Guilty</u>
<u>Nature of Plea Agreement</u>

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:24-cr-00056.

6. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

a. If defendant persisted in pleas of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the Indictment against defendant separately.

3

c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

Factual Basis

8. Defendant will plead guilty because he is in fact guilty of the charges contained in the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning in June 2022 and continuing to at least March 2024, in the Middle District of Tennessee and elsewhere, the defendant – an enlisted intelligence analyst in the United States Army, a holder of a Top Secret//Sensitive Compartmented Information ("TS//SCI") security clearance, and a public official, pursuant to Title 18, United States Code, Section 201(a)(1) –

4

conspired with an individual who lived in Hong Kong and who defendant suspected of being associated with the Chinese Government ("Conspirator A") to collect national defense information, including classified information and export-controlled technical data related to U.S. military weapons systems, and to transmit that information to Conspirator A in exchange for money, and the defendant did, in fact, engage in that conspiracy and transmitted sensitive and export-controlled U.S. military information to Conspirator A.

In connection with his military service, the defendant swore an oath to faithfully discharge his duties as a Sergeant in the United States Army. As part of his official duties, among other responsibilities, the defendant was required (1) to protect national defense information, classified information, and controlled unclassified information ("CUI"); (2) to train other members of his unit on the proper handling, storage, and dissemination of classified information and information marked CUI; and (3) to report suspicious incidents, including attempts by anyone without authorization to receive classified or sensitive information about U.S. military operations, organizations, equipment, or personnel. As a TS//SCI security clearance holder, the defendant was eligible to access material classified up to the TS//SCI level.

During their conspiracy, Conspirator A told the defendant the specific sensitive, non-public information related to the activities of the United States Army and the Department of Defense, including classified information, sensitive operational information, and sensitive material related to military equipment, that Conspirator A wanted the defendant to gather and surreptitiously transmit to Conspirator A. The defendant agreed with Conspirator A to collect these documents and information relating to the national defense for the purpose of transmitting the documents and information to Conspirator A, who the defendant knew was not authorized to receive these materials. Conspirator A offered and provided to the defendant, and the defendant accepted and

5

received from Conspirator A, money, in return for violating his official duties as a Sergeant, a holder of a TS//SCI security clearance, and a member of the United States Army.

Specifically, beginning around June 2022 and until at least March 2024, Conspirator A tasked the defendant with providing Conspirator A with sensitive U.S. military documents related to a variety of U.S. military platforms, including classified information related to missile defense and mobile artillery systems. During this period, the defendant sent Conspirator A dozens of sensitive and restricted (but unclassified) U.S. military documents regarding a variety of U.S. military weapons systems and U.S. military tactics and strategy, including documents containing export-controlled technical data. In exchange, Conspirator A made 14 payments to defendant worth approximately $42,000 for his work. The defendant also expressly told Conspirator A on numerous occasions that he was looking for classified information to provide to Conspirator A and the defendant attempted to recruit another soldier in the United States Army who had greater access to highly classified information as a sub-source to assist him in his endeavors.

In return for money and other items of value, the defendant: (1) surreptitiously gathered from restricted U.S. Government computer systems sensitive U.S. military information, including information marked CUI and subject to export controls, and agreed to gather national defense information, including classified information; (2) transmitted and attempted to transmit to Conspirator A export-controlled and CUI documents, in violation of his duties as a Sergeant; and (3) undertook this conduct knowing that he was not authorized to disclose the sensitive U.S. military information to Conspirator A. Among the items that the defendant collected and transmitted to Conspirator A were: (1) a document discussing the lessons learned by the United States Army from the Ukraine/Russia war that it would apply in a defense of Taiwan; (2) an operations order outlining the deployment of the defendant's unit to Eastern Europe in support of

NATO operations; (3) an Air Force Tactics, Techniques, and Procedures ("AFTTP") document relating to the HH-60 helicopter, which included a banner warning that the document contained technical data subject to export controls; (4) an AFTTP manual relating to the F-22A fighter aircraft, which included a banner warning that the document contained technical data subject to export controls; (5) an AFTTP manual relating to the operation of Intercontinental Ballistic Missile systems, which included a banner warning that the document contained technical data subject to export controls; (6) a publication related to the U-2 reconnaissance aircraft; (7) a document describing modifications of the B-52 aircraft; (8) documents describing tactics to counter unmanned aircraft systems and the use of unmanned aircraft systems in large-scale combat operations; (9) documents relating to Chinese military tactics, the Chinese military's preparedness, and the People's Liberation Army Rocket Force; (10) documents relating to rocket, missile, and artillery weapons systems, including the High Mobility Artillery Rocket System ("HIMARS") and the Terminal High Altitude Area Defense ("THAAD") missile defense system; (11) documents relating to military exercises and U.S. military forces in the Republic of Korea and the Philippines; and (12) a document relating to U.S. military satellites. The defendant's conduct violated his duties and responsibilities as a Sergeant, including the duties to protect sensitive, CUI marked, and classified United States Army documents and information.

At no time did the defendant have U.S. Government authorization, including an export license, to send any of these documents to Conspirator A in China.

The defendant knew that his conduct was wrong and illegal and took multiple steps to conceal it from the U.S. Army and the U.S. Government. The defendant and Conspirator A used multiple internet-based encrypted methods to communicate under the belief that such methods would conceal their activities. The defendant and Conspirator A used multiple forms of electronic

7

payment to pay the defendant for his activities, including electronic accounts that were not in Conspirator A's true name. Conspirator A also paid the defendant to purchase an additional smartphone to be used exclusively to communicate with and send sensitive U.S. military documents to Conspirator A, which the defendant did.

Although Conspirator A initially told the defendant that Conspirator A worked for a geopolitical consulting firm and repeatedly mentioned the "clients" that Conspirator A was sending the sensitive U.S. military documents to after receiving them from the defendant, at some point, the defendant began to suspect that Conspirator A did not, in fact, work for a geopolitical consulting firm servicing private clients and that instead, Conspirator A likely had some connection to the Chinese Government. This realization became clear to the defendant based on the type of information that Conspirator A sought; Conspirator A's increasing focus on operational and communications security, including discussions of destroying electronic devices by throwing them into lakes after transmitting sensitive U.S. military information to Conspirator A; Conspirator A's location in Hong Kong; and the defendant's training as a U.S. Army intelligence analyst and TS//SCI security clearance holder. Despite this realization, the defendant continued to gather and transmit sensitive U.S. military information to Conspirator A in Hong Kong until he was arrested in March 2024.

With respect to Count One, the defendant admits that: (1) he and Conspirator A formed, reached, and entered into the conspiracy, agreement, or understanding; (2) at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the purpose of the agreement, and, with that knowledge, then deliberately joined the conspiracy, agreement, or understanding; and (3) at some time during the existence or life of the conspiracy, agreement, or

8

Case 3:24-cr-00056  Document 29  Filed 08/13/24  Page 8 of 17 PageID #: 104

understanding, the defendant knowingly performed all of the overt acts as charged in the Indictment and did so in order to further or advance the purpose of the agreement.

With respect to Counts Two, Three, and Four, the defendant admits that (1) he exported, attempted to export, or caused to be exported from the United States a technical data related to defense articles listed on the U.S. Munitions List as described in the Indictment; (2) a license was required to export each of the documents; (3) the defendant did not obtain a license/approval for the export from the U.S. Department of State's Directorate of Defense Trade Controls (the "DDTC"); and (4) the defendant did the acts alleged in Counts Two, Three, and Four willfully.

With respect to Count Five, the defendant admits that he conspired with Conspirator A to commit the acts outlined above and as described in the Indictment.

With respect to Count Six, the defendant admits he (1) was a public official; (2) received, accepted, and agreed to receive or accept something of value, in return for being induced to do or not to do an act in violation of the defendant's official duty; and (3) acted corruptly, that is, intending to be influenced to do or to omit to do an act in violation of the defendant's official duty.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

Sentencing Guidelines Calculations

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a) and will consider the U.S.S.G. advisory sentencing range in imposing

9

Case 3:24-cr-00056    Document 29    Filed 08/13/24    Page 9 of 17 PageID #: 105

defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

10. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because the defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. The United States will not pursue additional charges related to the conduct outlined in the factual basis of this Plea Agreement. However, nothing in this Plea Agreement limits the United States in the prosecution of the defendant in other districts, or for crimes not related to the conduct outlined in the factual basis of this Plea Agreement.

13. The parties agree, for the purposes of calculating the sentencing guidelines range, to recommend that the criminal conduct described in all of the charges in the Indictment will group for the purposes of determining an offense level.

14. Defendant agrees to pay the special assessment of $600 at the time of sentencing to the Clerk of the U.S. District Court.

## Forfeiture of Specific Property

15. The Forfeiture Allegation of the Indictment put the defendant on notice that upon conviction of any of the charges in the Indictment, he shall forfeit to the United States all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and to the extent such property is not available for forfeiture, a sum of money equal to the total value described above.

Presentence Investigation Report/Post-Sentence Supervision

16. The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17. The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. The defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

18. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United

States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

### Entry of Guilty Pleas

19. The parties jointly request that the Court accept the defendant's pleas of guilty as set forth in this agreement and enter an order reflecting the acceptance of the pleas while reserving acceptance of this Plea Agreement until receipt of the pre-sentence report and sentencing.

### Waiver of Appellate Rights

20. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crimes to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the sentencing guidelines range as determined by the Court. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the sentencing guidelines range as determined by the Court.

## Other Terms

21. The defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. The defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613 and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

22. Should the defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

23. Based upon the concessions of the government in this Plea Agreement, the defendant knowingly, willingly, and voluntarily gives up the right to seek additional discovery beyond that which has already been provided to him. The defendant also agrees not to attempt to withdraw the guilty plea or file a collateral attack based on the existence of this information.

24. The defendant acknowledges that, in connection with his employment by the United States Army, he entered into certain agreements proscribing the unauthorized disclosure of protected information, including classified information, military information, and other information acquired as part of the defendant's performance of his official duties. The defendant acknowledges his continuing duties and obligations under these agreements, and they are hereby incorporated by reference.

25. The defendant understands and agrees that he has a continuing legal obligation to refrain from the unauthorized oral or written disclosure of classified information, or information

13

relating to the national defense. The defendant understands and agrees that the law forbids him from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, without regard to where, when, or how he learned of or came into possession of the classified information or information related to the national defense. The defendant understands and agrees that merely because classified information, or information relating to the national defense, may have appeared publicly does not render that information unclassified or less sensitive.

26. The defendant hereby assigns to the United States any profits or proceeds which he may be entitled to receive in connection with any publication or dissemination of information relating to his work in the United States Army, his unlawful activities, the facts and circumstances leading to his apprehension and conviction, or acquired from United States Army files, and agrees that any such profits and/or proceeds constitute the proceeds of his unlawful activity for purposes of 18 U.S.C. § 793(g) and any other violations of the Espionage Act. This agreement shall include all profits and proceeds for the benefit of the defendant, regardless of whether such profits or proceeds are payable to himself or to others, directly or indirectly, for his benefit or for the benefit of the defendant's associates or a current or future member of the defendant's family.

27. The defendant shall not circumvent this assignment by assigning the rights to his story to an associate or to a current or future member of the defendant's family, or to another person or entity who would provide some financial benefit to the defendant, to the defendant's associates, or to a current or future member of the defendant's family. Moreover, the defendant shall not circumvent this assignment by communicating with an associate or a family member for the purpose of assisting or facilitating their profiting from a public dissemination, whether such an associate or other family member is personally or directly involved in such dissemination.

28. Should the defendant at any time author or participate in the creation of any book, writing, article, film, documentary, or other production, or otherwise provide information for purposes of publication or dissemination, including, but not limited to, information provided through interviews with writers or representatives of any media organization or entity, the defendant hereby agrees first to submit in a timely fashion such book, writing, article, film, documentary, other production, or information to the United States Army and the Federal Bureau of Investigation ("FBI") for timely pre-publication review and deletion of information which, in the discretion of the United States Army and the FBI, should not be published or disseminated on the grounds of national security or the defendant's pre-existing agreements with the United States Army.

29. The defendant understands and agrees that he shall not knowingly have contact with any foreign government or agents thereof, except with the express permission of the FBI. The defendant understands and agrees that he shall not seek or knowingly accept, personally or through another person or entity, any benefit from such foreign government or agent thereof, and should such a benefit be received by the defendant, or some other person or entity on his behalf, he hereby assigns any such benefit to the United States. For purposes of this paragraph, any benefit provided to an associate of the defendant or to a current or future family member of the defendant, which is related to, arises out of, or is in recognition of, the defendant's unlawful activities, is a benefit deemed provided to the defendant himself.

30. The defendant agrees to be fully debriefed and to attend all meetings at which his presence is requested, concerning his participation in and knowledge of all criminal activities, including by voluntarily submitting to polygraph examinations by the government.

31. The defendant agrees to cooperate with the military in employment termination proceedings; including, administrative separation with an other than honorable characterization of service.

32. The defendant understands the potential consequences of this conviction set forth in 5 U.S.C. § 8312.

## Conclusion

33. Defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

34. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

35. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

36. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

37. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all

rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 8/13/2024

_____
KORBEIN SCHULTZ
Defendant

38. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 8/13/2024

_____
MARYKATHYRN HARCOMBE
Attorney for Defendant

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By: _____
Josh Kurtzman – Assistant U.S. Attorney
Adam Barry – Trial Attorney
Christopher Cook – Trial Attorney

For _____
Ahmed Safeeullah
Deputy Criminal Chief

17